UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00572-TAB-SEB |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S REQUEST FOR REMAND**

**I.    Introduction**

Plaintiff Mark R. experiences degenerative disc disease, neuropathy in his hands, and various mental impairments, including post-traumatic stress disorder and anxiety, substance abuse, and depressive disorders.  Plaintiff appeals the denial of his application for disability insurance benefits, arguing the Administrative Law Judge failed to provide adequate reasons for discounting the medical opinions of a state agency consultative examining physician and psychologist.  Plaintiff also argues that the ALJ ignored checkbox limitations in the reports of two state agency consultative reviewing psychologists.

The Court agrees with Plaintiff that remand is warranted.  The ALJ reversibly erred in her treatment of consultative examining psychologist Mary Kadlec's report by discounting it for being vague yet failing to seek clarification as the agency's regulations require.  *See* 20 C.F.R. § 404.1519p(b).[1]  That error was not harmless, so Plaintiff's request for remand [Filing No. 11] is granted.

---

[1] The parties' briefs cite a materially identical regulation at 20 C.F.R. § 416.919p(b).  That provision governs applications for supplemental security income, while 20 C.F.R. §

## II.    Background

Plaintiff applied for disability insurance benefits with the Social Security Administration on March 10, 2022. After the agency denied his application initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. An ALJ held an evidentiary hearing on November 15, 2023. [Filing No. 6-2, at ECF p. 26.] Following the hearing, the ALJ concluded Plaintiff was not disabled. [Filing No. 6-2, at ECF p. 27.] To reach that conclusion, the ALJ employed the Social Security Administration's "five-step sequential evaluation process" for determining disability status. 20 C.F.R. § 404.1520(a)(1).

At step one, the ALJ noted Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of March 3, 2022. [Filing No. 6-2, at ECF p. 28.] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (lumbar spine); neuropathy (hands); depressive disorder; anxiety disorder; post-traumatic stress disorder; and substance abuse disorder. The ALJ also found that Plaintiff had non-severe impairments, including hearing loss and diabetes. [Filing No. 6-2, at ECF p. 28–29.] At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of any impairments listed in the SSA's regulations as "conclusively disabling." *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021).

Before proceeding to step four, the ALJ calculated Plaintiff's residual functional capacity or his "ability to do physical and mental work activities on a sustained basis despite limitations

---

404.1519p(b) applies to applications for disability insurance benefits. Because this appeal concerns the latter, the Court cites the regulations at Part 404—though the analysis is the same. For ease of reading, the Court also edits quotations from cases citing Part 416 where appropriate, indicating any changes in brackets.

2

from his impairments." [Filing No. 6-2, at ECF p. 27.] The ALJ formulated Plaintiff's residual functional capacity as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional ramps and stairs, no ladders, ropes, or scaffolding, and occasional balancing, stooping, kneeling, crouching, and crawling. He is capable of occasional decision making and managing occasional changes in the work settings. He should have no more than occasional non-transactional interaction with the public. He is limited to frequent fingering bilaterally.

[Filing No. 6-2, at ECF p. 31.]

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a roof assembler, production machine tender, or general inspector. So, at step five, the ALJ assessed whether there were jobs that existed in significant numbers in the national economy that Plaintiff could perform given his age (51), education (high school), work experience, and residual functional capacity. After hearing testimony from a vocational expert, the ALJ found that such jobs existed, namely: marker, inspector hand packager, and hospital products assembler. Accordingly, the ALJ concluded Plaintiff was not disabled. [Filing No. 6-2, at ECF p. 42.]

### III.     Discussion

Plaintiff argues on appeal that the ALJ failed to provide adequate reasons for discounting the reports of state agency consultative examining physician, Dr. Stephen Parker, and psychologist, Dr. Mary Kadlec. He also argues that the ALJ ignored certain checkbox limitations in the reports of two consultative reviewing psychologists. The Court will reverse an ALJ's decision "only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). Though "the threshold for such evidentiary sufficiency is not high," *id.*, an ALJ still must build "an adequate 'logical bridge' connecting the evidence and her conclusions." *Tutwiler*, 87 F.4th at 857 (internal citation omitted). The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900.

    A.    **Consultative Examining Psychologist Report**

Plaintiff argues that the ALJ failed to provide a "good explanation" for discounting consultative examining psychologist Dr. Kadlec's report that opined, among other things, he was moderately impaired in his ability "to sustain his concentration and persistence." [Filing No. 11, at ECF p. 19–20.] The SSA's regulations require an ALJ to evaluate the persuasiveness of all medical opinions for "supportability" and "consistency" and articulate in her decision how she considered those factors. 20 C.F.R. § 404.1520c(a), (b)(2). Moreover, if the ALJ's residual functional capacity assessment "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *See* S.S.R. 96-8p. If a consultative examiner's report is "inadequate or incomplete," the regulations provide that the agency "will contact the medical source who performed the consultative examination, give an explanation of [its] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). When an ALJ rejects or discounts the opinion of the agency's own examiner, a reviewing court "can be expected . . . to take notice and await a good explanation." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

Dr. Kadlec's seven-page report concludes with a summary of Plaintiff's performance on a mental status examination and her clinical observations. In that summary, she opines: (1)

4

Plaintiff's "judgment and common sense appeared to be slightly impaired"; (2) Plaintiff's "ability to sustain his concentration and persistence appeared to be moderately impaired," and that "[h]e would likely have some problems being able to concentrate and persist on his job responsibilities"; (3) Plaintiff "appears to be experiencing some problems with his memory," and "[h]e would likely have some problems recalling tasks on the job"; (4) Plaintiff's "cognitive adaptive skills appeared to be slightly impaired"; and (5) Plaintiff's "understanding of arithmetic appeared to be slightly limited." [Filing No. 6-9, at ECF p. 357.]

      The ALJ found Dr. Kadlec's opinion "somewhat persuasive." The ALJ explained that Dr. Kadlec "provided some support for [her] findings, noting [Plaintiff] made mistakes on serial sevens, he had some difficulty with recall, and he made some mistakes with calculations." However, the ALJ faulted Dr. Kadlec's findings for being "somewhat vague, noting [Plaintiff] would have *slight* impairments in cognitive adaptation and arithmetic and *some* problems with memory, recall, and concentration and persistence, but not clearly defining the meaning of slight or some." (emphasis added). The ALJ also highlighted inconsistencies in Dr. Kadlec's report. [Filing No. 6-2, at ECF p. 37.] Indeed, Dr. Kadlec noted elsewhere that Plaintiff "appeared to have no problems recalling information," [Filing No. 69, at ECF p. 355], and that his performance on the mental status exam "does not indicate any issues with his level of cognitive functioning," [*id.* at 357]. The ALJ found Dr. Kadlec's report "somewhat consistent with the overall record, which shows [Plaintiff] is not as limited in concentration, persistence, and pace, but is limited to occasional decision making, occasional changes, and occasional non-transactional interaction with the public." The ALJ observed that the record contained "minimal mental status examinations" and did not reflect ongoing concentration issues but rather showed

5

Plaintiff presented as alert and oriented at medical appointments and reported spending his time watching television and movies. [Filing No. 6-2, at ECF p. 37.]

Plaintiff argues—and the Court agrees—that the ALJ was required to seek clarification from Dr. Kadlec if she believed the report was deficient for vagueness. *See* 20 C.F.R. § 404.1519p(b) ("If the report is inadequate or incomplete, [the agency] will contact the medical source who performed the consultative examination, give an explanation of [its] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."). The plain text of 20 C.F.R. § 404.1519p(b) supports Plaintiff's position, and so does the limited case law applying the regulation. By reasoning that Dr. Kadlec's opinion was vague because it did not clearly define the meaning of "slight or some" (e.g., noting Plaintiff "would likely have *some* problems being able to concentrate and persist on his job responsibilities"), the ALJ implied the report was "inadequate" or "incomplete" as to the scope of Plaintiff's limitations. *Cf. La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *5 (S.D. Ind. May 15, 2025) ("The ALJ considered [the] consultative examination report to be 'vague' because it 'only addressed [the claimant's] sitting tolerance, but did not indicate reasonably associated standing, walking, postural, or environmental limits.' . . . The Court finds that this description equates to [the] consultative examination report being 'inadequate,' 'incomplete,' and/or 'missing information' within the meaning of 20 C.F.R. § [404.1519p]."). The Seventh Circuit (albeit in an unpublished decision) acknowledged the ALJ's "regulatory duty" to recontact the agency's consulting examiner "upon finding the doctor's report inadequate." *Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *5 (7th Cir. Mar. 15, 2023) (citing 20 C.F.R. § 404.1519p(b)); *see also Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) ("[I]f the ALJ believed that [the

6

consultative examiner's] opinion was deficient, the ALJ should have sought additional clarification from [the physician] before discounting it outright.").

The Commissioner does not defend the ALJ's vagueness reasoning but responds that remand is not warranted for failing to seek clarification because the ALJ "provided other rational reasons for finding the opinion less than persuasive." [Filing No. 13, at ECF p. 8 (citing *Jonathan C. v. O'Malley*, No. 4:22-cv-00150-KMB-TWP, 2024 WL 958020 (S.D. Ind. March 6, 2024), *aff'd sub nom. Cain v. Bisignano*, 148 F.4th 490 (7th Cir. 2025)).] The Commissioner's reliance on *Jonathan C.*, however, is misplaced. There, the Court concluded that the ALJ had no duty to seek clarification from two psychological consultants because the plaintiff had not shown "why this vague opinion somehow render[ed] the record inadequate or incomplete." *Jonathan C.*, 2024 WL 958020 at *6. But in doing so, the Court did not apply or cite 20 C.F.R. § 404.1519p(b). The Court instead referenced case law applying a different but related regulation—20 C.F.R. § 404.1520b. *Jonathan C.*, 2024 WL 958020, at *6 (citing *Brenda S. v. Kijakazi*, No. 1:20-cv-01806-TAB-JRS, 2021 WL 3749048, at *5 (S.D. Ind. Aug. 25, 2021) ("An ALJ may recontact a medical source to help resolve insufficiencies or inconsistencies if the medical record is insufficient or inadequate. 20 C.F.R. § 404.1520b. However, the regulations do not require an ALJ to recontact a doctor where there is adequate information to render a decision.")). However, as the Court in *La'Toya R.* explained, 20 C.F.R. § 404.1520b and 20 C.F.R. § 404.1519p "differ in scope." *La'Toya R.*, 2025 WL 1413807, at *5. Where "Section [404.1520b] extends to insufficiencies and inadequacies of the entire 'case record,' . . . Section 20 C.F.R. § [404.1519p] addresses insufficiencies and inadequacies solely of a consultative examiner's report." *Id.* And the latter provision is "mandatory." *Id.*

In any case, this Court is not persuaded that the ALJ's additional reasons for discounting Dr. Kadlec's report built "an accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d at 837. The Commissioner first notes that the ALJ found Dr. Kadlec's report internally inconsistent. While Dr. Kadlec assessed that Plaintiff would have some difficulty recalling tasks and concentrating and persisting on the job, she also observed that Plaintiff had no problem recalling information and no cognitive functioning issues. These inconsistencies, however, were further reason to contact the consultative examiner for clarification of her report. *Cf. Kaitlyn C. v. Kijakazi*, No. 1:21-cv-00931-MJD-TWP, 2022 WL 1301753, at *6 (S.D. Ind. May 2, 2022) ("[A]n ALJ is under an obligation to develop a full and fair record. This is especially true in cases, like here, where the ALJ faults the State's own consultative examiner for not providing an adequate report, yet fails to remedy the issue as set forth in 20 CFR § [404.1519p(b)]." (internal quotation marks and citations omitted)).

The Commissioner also notes that the ALJ found the overall record did not reflect ongoing concentration issues but instead showed that Plaintiff was observed to be alert and fully oriented at two medical appointments and spent his time watching television and movies. [Filing No. 6-2, at ECF p. 37.] The Seventh Circuit has found observations that a claimant was alert and oriented at medical appointments relevant to assessing their concentration capacity. *See, e.g.*, *Cain v. Bisignano*, 148 F.4th 490, 499 (7th Cir. 2025); *Reynolds v. Kijakazi*, 25 F.4th 470, 472 (7th Cir. 2022); *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019). But in each of those cases—unlike here—the ALJ included at least some concentration, persistence, and pace-related limitation in the claimant's residual functional capacity. Finally, this Court necessarily shares the Seventh Circuit's skepticism that watching television or movies says much about one's ability to concentrate during a workday. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) ("While we

are skeptical that the ability to watch television for several hours indicates a long attention span, we agree that reading and playing cards do suggest such a trait.").

All told, the ALJ should have reached back to Dr. Kadlec to clarify the consultative examiner's report before discounting it for vagueness. *See* 20 C.F.R. § 404.1519p(b). That error alone warrants reversal, "given a proper consultative examination report could have altered how the ALJ considered other evidence." *La'Toya R.*, 2025 WL 1413807, at *5. That is particularly true here where the ALJ observed "minimal mental status examinations" in the record. In addition, the ALJ's other reasons for discounting Dr. Kadlec's report missed the substantial evidence mark. Accordingly, the Court remands this case to the agency for further proceedings.

### B. Additional Arguments

The Court, having found reversible error in the ALJ's treatment of Dr. Kadlec's report, declines to address Plaintiff's additional arguments for remand. On remand, the ALJ may reconsider her assessment of consultative examining physician Dr. Parker's report as well as the reports of the state agency reviewing psychologists. In doing so, the ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves," *see Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018), and make clear for future reviewing courts that she considered any checkbox limitations not adequately translated into the narrative section of Mental Residual Functional Capacity Assessment ("MRFC") forms, *see DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

### IV. Conclusion

For the foregoing reasons, Plaintiff's request for remand [Filing No. 11] is granted. The final decision of the Commissioner is reversed, and the case is remanded to the agency for further proceedings.

Date: 2/2/2026

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email